COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Annunziata and
          Bumgardner
Argued at Alexandria, Virginia

DOUGLAS S. JORDAN
                                    MEMORANDUM OPINION[*] BY
v.     Record No. 1533-97-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JANUARY 27, 1998
MARY ELMORE JORDAN

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     M. Langhorne Keith, Judge

          Robert L. Vaughn, Jr. (Glennon, Goodman,
          Lubeley, Vaughn & Walker, L.L.P., on briefs),
          for appellant.

          Carolyn T. Hogans (Dennis M. Hottell; John E.
          Byrnes; Dennis M. Hottell & Associates, P.C.,
          on brief), for appellee.


     On appeal from the trial court's decision awarding Mary

Elmore Jordan (wife) spousal support, Douglas S. Jordan (husband)

contends that the court erred in its determination of the proper

amount.  We find no error and affirm the judgment of the trial

court.

                        I. Background

     The parties were married December 19, 1965, early in

husband's naval career.  During the marriage, the parties

relocated at least five times, and wife performed all household

duties.  Husband obtained his master's degree during the

marriage.  Wife, who had two years of college and a secretarial

_____

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

degree, was employed full-time throughout the marriage except for approximately five years after the parties' daughter, Lynn, was born in 1970. Lynn suffers some degree of mental illness and has never lived independently. Wife continued to provide Lynn a home and financial support.

The parties' lifestyle during the marriage included owning a townhome in Virginia, driving late model cars, taking vacations regularly, sending their daughter to one year of college, and eating out regularly. Husband retired from the Navy with the rank of Commander and secured an additional job in McLean, Virginia, which ultimately led to a transfer to California. Wife gave up her job, and the parties moved to California in 1990 and purchased a home. Husband was laid off in 1992, and the mortgage was foreclosed.

When the parties returned from California, husband secured employment at a salary of $64,000 per year and lived first with friends and eventually in a two-bedroom apartment in Reston, Virginia. Wife and the parties' adult child lived in wife's sister's home in South Carolina, which was temporarily vacant, and wife was employed at a wage of $8.94 per hour. After the parties decided to terminate the marriage, wife told husband she wanted to use some of the money in the parties' joint account for a down payment to buy a home in South Carolina. Husband, without consulting wife, transferred all of the parties' joint money into an account in his name alone. He also ceased sending wife money,

2

as he had been doing during the separation.  Wife was later awarded court-ordered pendente lite support.

When wife's sister returned to her home in South Carolina, wife and Lynn moved to a small, run-down rental property in a depressed neighborhood.  There were only two or three rental properties available when she began her search.  The rented home is "nothing like what [wife was] used to living in."  Wife considered the area unsafe and was required to call the police for aid during at least four neighborhood disturbances.  During the pendency of this case, wife has been "scared to spend money" and has saved as much as possible.

On April 15, 1997, a final hearing was scheduled on the issues of equitable distribution and spousal support.  The parties resolved the equitable distribution issue by agreeing to an approximately equal division of assets.  At the hearing on spousal support, the court heard the testimony of the parties and received exhibits.  By letter opinion issued April 22, 1997, wife was awarded support of $1,200 per month.  Husband filed a motion seeking enforcement of a settlement he contended the parties had reached prior to the hearing and a motion to reconsider the spousal support award.  Both motions were denied, and a final divorce decree was entered May 9, 1997.

II.

We will not reverse a trial court's determination of spousal support unless it is "plainly wrong or without evidence to

3

support it." Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 794 (1997) (citations omitted). Moreover, on appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the party prevailing below. See Gottlieb v. Gottlieb, 19 Va. App. 77, 81, 448 S.E.2d 666, 668 (1994).

Code § 20-107.1 sets out the factors to be considered in setting spousal support. A court is not required to "quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors," as long as the court's ruling has "some foundation based on the evidence presented." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986). "'When a trial court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination will not be disturbed except for a clear abuse of discretion.'" Huger v. Huger, 16 Va. App. 785, 791, 433 S.E.2d 255, 259 (1993) (citation omitted).

Husband contends that the trial court erroneously considered evidence of speculative future expenditures for maintenance and repairs to wife's rental property, new household furnishings, a new vehicle, and legal fees. "[I]n setting support awards, a court 'must look to current circumstances and what the circumstances will be within the immediate or reasonably foreseeable future.'" Furr v. Furr, 13 Va. App. 479, 482, 413 S.E.2d 72, 74 (1992) (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990)) (other citations

4

omitted).  See Code § 20-107.1.  "What is 'reasonably foreseeable' depends on the circumstances of the particular case."  Furr, 13 Va. App. at 482, 413 S.E.2d at 74.  In the instant case, the trial court found that wife was living in a "dilapidated house in a rundown neighborhood" and that she "has not had a vacation in four years, is living in a marginal neighborhood, and is driving a seven year old automobile."  The court considered these circumstances when it determined wife's expenses, and we cannot hold that its conclusion was either unsupported by the evidence or an abuse of discretion.

Husband next contends that the trial court erred in considering wife's expenses on behalf of the parties' adult daughter in fashioning the spousal support award.  This argument lacks merit.  While the evidence established that the parties assisted their adult child during the marriage and wife continued to do so after the separation, the trial court explicitly stated in its letter opinion that "the expense Ms. Jordan is spending on Lynn was not a determinative factor and the Court's award would not be different if Lynn were self-sufficient," in effect giving no weight to wife's support of Lynn.

Husband next argues that the record fails to support the trial court's finding that the parties' multiple relocations throughout the marriage "precluded any opportunity to further [wife's] education."  Husband claims that he encouraged wife to return to school and that "[s]he could easily have availed

5

herself of the opportunity to improve her education" during the ten-year period she was employed at George Mason University. Wife was employed full-time during the marriage except when Lynn was quite young, and she testified that continuing her education would have been difficult because of the parties' frequent relocations.  Credible evidence exists to support the trial court's finding.

Lastly, husband argues that the amount of spousal support determined by the court is excessive in light of wife's "conscious choice" to live in her present circumstances and her ability to save 85% of her pendente lite payments.  He further claims that "[t]here was absolutely no testimony that the house occupied by Ms. Jordan was in a state of disrepair, much less dilapidated."  Contrary to husband's assertions, the record is replete with evidence establishing a markedly lower standard of living.  Due to husband's seizure of the parties' joint assets, wife was unable to buy a home, and her choice of rental properties was quite limited.  From photographic evidence reflected in the record, the trial court found her rented home to be "a hovel."  Furthermore, wife testified that she no longer goes out to eat or takes vacations and that she is afraid to spend money for fear that she could not meet her expenses.  Wife "should not be penalized . . . for her frugality in establishing a savings account as a shield against emergencies."  Moon v. Moon, 210 Va. 575, 577, 172 S.E.2d 778, 779 (1970).  See Via v.

6

<u>Via</u>, 14 Va. App. 868, 419 S.E.2d 431 (1992). The trial court duly considered the relevant factors and concluded that wife "certainly is living . . . in conditions that are not up to the conditions that she lived in while she was married." We hold that the award of spousal support was not an abuse of discretion.[1]

Wife has requested an award of attorney's fees for matters relating to this appeal. Accordingly, we remand this case to the trial court for the sole purpose of entering an appropriate award of attorney's fees for services rendered to wife on appeal. <u>See</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 479 S.E.2d 98 (1996).

For the foregoing reasons, we affirm the judgment of the trial court and remand the case to the trial court for determination of the attorney's fees incurred in this appeal.

<u>Affirmed and remanded.</u>

---

[1] Husband also contends that the trial court's award is excessive and that there is "no other rational way to explain the court's findings and ultimate ruling" other than that it serves to penalize him and reward wife for their respective relationships with their daughter. Having determined that the award is not excessive, we need not consider this argument.